IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CLARENCE E. GRISSOM,

                    **Plaintiff,**

        v.                          CASE NO. 10-3134-SAC

KAREN ROHLING, WARDEN,

                    **Defendant.**

## O R D E R

This civil rights complaint, 42 U.S.C. § 1983, was filed by an inmate of the Larned Correctional Mental Health Facility, Larned, Kansas (LCMHF). Plaintiff moves for leave to proceed without prepayment of fees and for appointment of counsel.

## MOTION TO PROCEED WITHOUT PREPAYMENT OF FEES

Mr. Grissom has previously been informed that 28 U.S.C. § 1915 requires an inmate seeking to bring a civil action without prepayment of fees to submit a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing" of the action "obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). This action may not proceed unless plaintiff provides the financial record required by federal law to support his motion or pays the full filing fee of $350.00.[1] He will be given time to do so, and is

---

[1] Plaintiff has previously been informed that if his motion is granted, he is still obligated to pay the filing fee, but may do so through payments automatically deducted from his inmate account as funds become available.

forewarned that if he fails to comply with § 1915 in the time allotted, this action may be dismissed without further notice.

**CLAIMS AND ALLEGATIONS IN COMPLAINT**

The court has screened all materials filed thus far by Mr. Grissom, and finds that the Complaint is the first 12 pages of Document (1). In the Complaint, plaintiff alleges that he was transferred to LCMHF in July, 2009, and generally claims that he has not been receiving proper medical care.

As Count I of his Complaint, Mr. Grissom asserts an 8th Amendment violation. In support, he alleges as follows. "The nurses" pass out medication to him and others on administrative segregation. He was given another inmate's medication that was not prescribed for him. Nurse Young does not pay attention to what medication she gives out. The nurses have made big mistakes and lack proper work ethic. RN Marlene Able refuses to take responsibility to correct the situation. He wants the nurses to be informed as to what his proper medications are and not to expect him to tell them, and he wants to see his medication spread out before it is put into metamucil because sometimes they are given the wrong medication.

Under Count II, plaintiff alleges the following "Supporting Facts." On January 8, 2010, the inmates in segregation were given H1N1 flu shots, but he was not given his because RN Able refused to call segregation staff to take Grissom for his flu shot and for his breathing treatment. Able claimed it was Grissom's fault for "not coming to the clinic for his appointment" and said he is responsible for letting staff know if he needs a treatment. Grissom counters

2

that he has "inform(ed) the officers for his breathing treatment" and experienced a "negative attitude" from segregation staff in the way they reply and ignore requests. He alleges that the schedule for his treatments is posted and he continues to request his breathing treatments, but that "the officers failed to act" on his requests.

As Count III, plaintiff asserts violation of the 14th Amendment. He alleges in support that his medical condition can be life-threatening and staff are aware of his serious medical need, but Warden Rohling is ignoring "the issues between the officers and the clinic staff."

Under "Nature of the Case" where plaintiff was instructed to "briefly state the background" of his case, Mr. Grissom instead makes the following additional allegations. On April 19, 2006, at the "Lansing Max Clinic" he was medically screened by Dr. Stanton. He warned Stanton that he was allergic to the drug "Bactrim" and that his medical records so indicated, but Stanton disregarded his warning. Dr. Stanton intimidated him by stating that health care would not be provided otherwise. Plaintiff took the Bactrim, and had a "glaringly obvious reaction with profound swelling of his glands to his throat, hands, legs, and scrotum." He was intensely fearful due to his choking and restricted breathing. He was then given a different drug to which he was not allergic, and another notation was made in his medical record of his allergy to "sulfa drugs." Dr. Stanton's "error" caused plaintiff's to lack confidence that he will be treated correctly by Department of Corrections physicians employed by Correct Care Solutions (CCS). Plaintiff filed an administrative grievance on this matter, and was retaliated

3

against "in the form of a facility transfer" to El Dorado Correctional Facility (EDCF). He also alleges that he was transferred for writing too many grievances. He claims his problems originated in Lansing Correctional Facility (LCF) and continued at EDCF with medical or CCS staff and guards thinking he files too many grievances, when he is exercising his First Amendment right to file legitimate grievances.

Plaintiff further alleges that on March 30, 2010, RN Able threatened that if he refused to see Dr. Stanton his medications and chronic care would be discontinued. He was thus forced to see Dr. Stanton, even though he informed officials that Stanton had given him the wrong medication.

Under "Request for Relief" plaintiff does not specify any relief that he seeks. Instead, he adds more allegations. He alleges that he is "Central Monitor" and is being denied program opportunities including church fellowship and to earn the same wage as a general population inmate. He also alleges that he is being denied access to the prison law library.

The court construes the Complaint as raising the following claims: (1) nurses providing medications in ad seg have not been diligent and have made mistakes, (2) he was denied his H1N1 flu shot, (3) serious issues exist between the clinic staff and the correctional officers that have interfered with his ability to receive necessary medical treatment, (4) in 2006 Dr. Stanton prescribed a medication to which Grissom was allergic despite the notation in his medical record, and Grissom suffered a serious allergic reaction, (5) Grissom is thought to have filed too many administrative grievances and has been retaliated against as a

4

result, (6) Nurse Able forced him to see Dr. Stanton by threatening to discontinue his care and medication, (7) he is denied programs and privileges, and (8) he has been denied access to the prison law library.

**SCREENING**

Because Mr. Grissom is a prisoner, the court is required by statute to screen his Complaint and to dismiss the Complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). Having screened all materials filed, the court finds the Complaint is subject to being dismissed for the following reasons.

**PERSONAL PARTICIPATION**

In the caption of the Complaint, Karen Rohling is the only individual named as a defendant. In paragraph (2), plaintiff describes Dr. Danny Stanton and R.N. Marlene Able as defendants, and makes no mention of defendant Rohling. Plaintiff must name every defendant that he intends to sue in the caption of the complaint. Then he must again name every defendant in paragraph (2), and provide the information required in that paragraph for each named defendant. He may not name one defendant in the caption, and a couple more in the paragraph (2), and then refer to numerous others throughout the body of the complaint and subsequent "motions." All persons other than defendant Rohling, who are mentioned in paragraph (2) or elsewhere as having aggrieved plaintiff in some manner, were

5

not included in the caption and thus have not been properly named as a defendant in this case. The only properly designated defendant in this case is Warden Rohling.

The court finds that sufficient facts are not alleged establishing the direct personal participation of defendant Warden Rohling in the acts or inactions that are the basis for the Complaint.[2] The court takes judicial notice of Grissom v. Roberts, 09-3128 (D. Kan. Sept. 9, 2010). Plaintiff was informed in this prior action that he must describe the personal participation of a named defendant in the unconstitutional acts upon which the Complaint is based, or no claim is stated against that defendant. The only mention of defendant Rohling in the instant Complaint is plaintiff's conclusory statement that she "is ignoring the issues between the officers and the clinic staff" concerning "inmate's condition" at the facility. This bald statement is not sufficient to show defendant Rohling's personal participation in any of the 8 claims raised in the Complaint.[3]

The court also finds that no claims against any person other than Warden Rohling have been properly added by Mr. Grissom, since none of his filings discussing other persons and claims is a proper "Amended Complaint." It follows that none of the other persons or acts discussed in the Complaint, the attachments to the Complaint, or plaintiff's 18 "motions" and their attachments are properly

---

[2]  Warden Rohling's affirmance of denials of relief in connection with Grissom's numerous administrative grievances do not constitute personal participation by Warden Rohling in the prior acts challenged therein. Furthermore, Warden Rohling is not liable for the acts of all employees at the LCMHF based only upon her supervisory capacity at the facility.

[3]  The 8 claims involve alleged acts or inactions by Dr. Stanton, Nurse Able, and various nurses, clinic staff, and correctional officers who are often unnamed.

6

before the court at this time. The entire Complaint is subject to being dismissed for the foregoing reasons.

**SHOW CAUSE OR AMEND COMPLAINT**

Plaintiff will be given time to show cause why this action should not be dismissed for the foregoing reasons. During that time, he may file one "Response to Order" showing cause why his Complaint should not be dismissed. In the alternative, he may file a full and proper "Amended Complaint." He should not file both.

Any "Amended Complaint" filed by Mr. Grissom must conform to the following. It must be submitted on court-provided forms with "Amended Complaint" written at the top of the first page. Mr. Grissom must carefully read and follow the instructions sent with the forms and those on the forms. He must name all defendants in the caption and again in paragraph (2). He must state one claim only under each Count and if he has more than 3 properly joined counts, they must be clearly numbered. Under each Count, he must allege the supporting facts that relate to that Count only. His supporting facts must include the names of the participants and a brief description of their illegal actions, as well the date and location of each incident. Under "Request for Relief" he must state what relief he is asking the court to provide and nothing else. Improperly joined claims should not be included, and are subject to being dismissed without prejudice.

The numerous pages attached to Mr. Grissom's 12-page Complaint have been reviewed and shall be considered no further herein, unless specific pages are clearly identified and referred to in plaintiff's "Response" or in a proper and full "Amended Complaint" and their

significance to a properly raised claim against a properly named defendant is sufficiently explained. Plaintiff's papers or "motions" filed after the Complaint, have been reviewed and likewise will not be considered further without proper reference in the Response or an Amended Complaint.

**<u>DEFICIENCIES IN CLAIMS</u>**

The court mentions some glaring deficiencies in plaintiff's allegations because they are one reason the Complaint is not construed to state additional claims against additional defendants. In addition, Mr. Grissom is thus forewarned that in the event he files an "Amended Complaint" with the same deficiencies, it will be screened and will likely be dismissed.

The court notes that, even if the Complaint were liberally construed as naming Dr. Stanton as a defendant, the allegations involving this individual would be subject to dismissal upon screening. Plaintiff's allegations involving Stanton appear from the face of the Complaint to be barred by the two-year statute of limitations applicable to civil rights complaints. Since the incident with Dr. Stanton occurred in April 2006, Mr. Grissom had until April 2008 to file a complaint based on that incident. The same is true with respect to Grissom's transfer to EDCF in May 2006, and any other acts or inactions that occurred more than two years prior to the filing of the Complaint in this case.

The court notes that plaintiff's repeated bald statements that he was unconstitutionally denied breathing treatments are not sufficiently supported by the facts alleged. The few allegations that refer to RN Able and describe her acts or inactions include the

bald statement that she failed to properly train and supervise nurses,[4] and indicate, at most, that she occasionally held plaintiff accountable for refusing treatments and being non-compliant. Plaintiff describes no incident in which Nurse Able personally denied medical treatment to plaintiff where plaintiff was not at fault. His own allegations and exhibits indicate that in August 2009 he asked that his regularly scheduled breathing treatments be provided only if needed and requested by him; that recently he signed refusals of treatment; that at times he refused for various reasons to immediately go with correctional officers when called to the clinic for treatments; that he sought treatments either at unscheduled times or in an inappropriate manner; and that he refused medical care when it was to be provided by Dr. Stanton and certain other individuals. Mr. Grissom is not entitled to a scheduled breathing treatment whenever, wherever, and however he demands it. A prison inmate may not refuse to comply with reasonable procedures and efforts to administer medical care, or refuse treatment by certain medical providers, and then validly contend that others have denied treatment to him. Mr. Grissom must cooperate and follow directions in order to receive his treatments.

Furthermore, plaintiff fails to allege facts indicating that the occasional omission of a breathing treatment resulted from deliberate indifference or in serious pain or deprivation. He also alleges no facts demonstrating that Able or any other named

---

[4] This claim of failure to properly train and supervise is completely conclusory. Plaintiff does not describe circumstances during which a named nurse injured him personally while administering medication on a date certain and allege facts showing that person's acts resulted from a lack of particular training or supervision by Nurse Able.

9

individual acted with a culpable state of mind.[5]  Mr. Grissom has shown that he was diagnosed with a serious condition of COPD and prescribed breathing treatments three times a day, that must be 6 hours apart.  However, his filings in his two cases also clearly show that his chronic conditions including his COPD have been diagnosed, medications and treatments have been prescribed, medical staff at the LMHCF have posted and made correctional staff aware of a schedule of regular breathing treatments, that plaintiff has been notified of his obligation to inform staff at an appropriate time that he needs his next treatment, and that Mr. Grissom has actually been provided scheduled breathing treatments with occasional exceptions, despite his non-compliance.  See Smart v. Villar, 547 F.2d 112, 114 (10th Cir. 1976)(Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints.").

Plaintiff's claims of retaliation and problems at LCF and EDCF with medical staff or guards thinking he is filing too many grievances are devoid of necessary factual support.  In plaintiff's "Dealing with Retaliation" (Doc. 4), he alleges he has been transferred three times and faces another transfer as retaliation and punishment for filing a lawsuit.  However, no facts whatsoever are alleged indicating Grissom was transferred because he filed a lawsuit or that he would not have been transferred "but for" a retaliatory motive.  Nor is the person or persons responsible for any such transfer named as defendant(s).  Grissom also alleges that

---

[5] Plaintiff was fully advised in his prior case of the legal standards for an 8th Amendment claim of denial of medical treatment.

COII Michael Sterns searched his cell, went through his legal materials and left his cell in disarray. Neither this claim nor Sterns has been properly joined in this action. Plaintiff has been previously advised that any challenges to disciplinary actions and loss of good time are not properly raised in a civil rights complaint. Other claims discussed by plaintiff that suffer from similar deficiencies involve denial of programs and privileges, lack of adequate infirmary and cleaning of equipment, lack of emergency and back-up equipment, interference with his mail, numerous strip searches, lack of protective custody, frequent cell searches, personal property removal from his cell, denial of contact with outside publisher for legal books, sexual and other harassment, and comments by correctional officers. The court reiterates that most of these claims do not include defendant as a participant and have not been properly joined. Thus, they are not currently before the court.

Mr. Grissom repeatedly claims, in conclusory fashion, that he is being denied access through limitations on his writing and mailing materials and is being punished or retaliated against for filing many grievances and a lawsuit. As plaintiff was advised in his prior case, to state a claim of denial of access, an inmate must allege something more than that the prison's law library or legal assistance program is inadequate or unavailable.[6] He must "go one step further and demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim," causing him "actual injury." Lewis v. Casey, 518 U.S. 343, 348, 350 (1996). He may do

---

[6] Plaintiff was also previously advised that he has no constitutional right to free copy services, and certainly not to abuse such privileges.

so by alleging actual prejudice to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim, or that a nonfrivolous legal claim has been dismissed, frustrated or impeded. Id. at 350, 353. Plaintiff makes no such allegation of actual injury, and any claim by him of a denial of access to the courts is belied by the sheer volume of materials he has managed to submit to this court.

Nor has Mr. Grissom alleged any facts indicating he is entitled to judicial relief from restrictions on writing and mailing materials or copy services. An inmate who incessantly files improper motions and other papers, like Mr. Grissom, is not entitled to relief from such restrictions based solely upon his bald statement that the amount provided is inadequate. Prison officials undoubtedly have the authority to limit the amount of materials they provide at no cost to inmates, particularly when those costs are ultimately borne by taxpayers. As the court noted in his prior case, it is plain that had Mr. Grissom not filed the many unnecessary motions and letters in his cases, he would have plenty of writing materials to produce copies for his own records as well as adequate postage.

**IMPROPER FILINGS**

In his prior action, Mr. Grissom also filed a complaint with numerous attachments and "motions" containing jumbled references to myriad claims not all properly joined, and to acts by many persons not all properly named as defendants. Despite the court's screening order directing him to refrain from submitting more improper

filings, he proceeded to file 30 additional "motions." Despite the court explicitly setting forth and discussing the Federal Rules of Civil Procedure governing proper amendment of a complaint and improper joinder and its repeated admonition that he could not add claims or parties by simply sending in papers that discussed new acts or claims, he subsequently filed papers discussing unrelated acts by persons who were not defendants. Mr. Grissom ignored the court's instructions and admonitions in his prior case and continues that pattern in this case. He has obstructed this court's ability to hear and resolve his claims and those of others.

Plaintiff is forewarned that if he continues to file improper, unnecessary, illegible, or indecipherable papers that do not comply with the court's orders and instructions in this and his prior case, the court has the authority to fashion and impose restrictions upon his filings. Such restrictions might even include dismissal of this action for abuse of judicial process or failure to comply with court orders.

Mr. Grissom has sent letters to the clerk's office that are often difficult to decipher, and has requested copies of hundreds of pages of materials that he submitted, apparently without preparing and retaining his own copies. Mr. Grissom has repeatedly been directed to prepare handwritten copies, if necessary, in order to maintain a copy for his own records of each paper that he submits to this court. The court denies all currently pending requests for copies of materials in this case. In order to obtain free copies in the future of materials Mr. Grissom has submitted in this case, he must send a written request to the clerk clearly specifying the materials he seeks by case and docket number. He must also state

the reasons he is requiring free copies including what use he intends to make of the copies and why his own records do not already contain the copies.

Plaintiff is ordered to submit no more exhibits and evidentiary material until he is either instructed to do so by the court or required to offer proof of his allegations on a dispositive motion, at a hearing, or at trial.

Plaintiff's motion to appoint counsel is denied, without prejudice. There is no constitutional right to appointment of counsel in a civil rights case. Instead, the matter is within the court's discretion. The court is not convinced that appointment of counsel in this case at this juncture is warranted. Plaintiff may renew this motion at a later time, if the matter survives screening.

**IT IS THEREFORE ORDERED** that plaintiff is given thirty (30) days in which to satisfy the filing fee prerequisites for this action by either providing the certified statement of his inmate account for the appropriate six-month period, or paying the full filing fee of $350.00.

**IT IS FURTHER ORDERED** that within the same thirty-day period, plaintiff must file a single "Response" in which he shows cause why this action should not be dismissed for the reasons stated herein; or, in the alternative, an "Amended Complaint" that complies with this Order and the federal and local rules.

**IT IS FURTHER ORDERED** that plaintiff's Motions to Appoint Counsel (Docs. 3, 16), and all other pending motions (Docs. 4-22), except plaintiff's Motion to Proceed Without Fees (Doc. 2), are denied without prejudice.

The clerk is directed to remove Danny Stanton and Marlene Able from the docket sheet, for the reason that they were not named in the caption of the Complaint.

The clerk is also directed to send plaintiff forms for filing a Section 1983 complaint.

**IT IS SO ORDERED.**

Dated this 15th day of September, 2010, at Topeka, Kansas.

<u>s/Sam A. Crow</u>
U. S. Senior District Judge